[620 NYS2d 196]

BRISTOL-MYERS SQUIBB, INDUSTRIAL DIVISION, Respondent, v DELTA STAR, INC., Respondent, and WESTINGHOUSE ELECTRIC CORPORATION, Appellant.

Fourth Department, November 16, 1994

APPEARANCES OF COUNSEL

*Menter, Rudin and Trivelpiece, P. C.,* Syracuse *(Gerard Mathews* and *Robert G. Mellilo* of counsel), for appellant.

*MacKenzie, Smith, Lewis, Michell & Hughes,* Syracuse *(Dennis P. Hennigan* of counsel), for Bristol-Myers Squibb, Industrial Division, respondent.

*Melvin & Melvin,* Syracuse *(Susan E. Otto* of counsel), for Delta Star, Inc., respondent.

### OPINION OF THE COURT

GREEN, J.

This appeal requires us to revisit the borderland between tort and contract, an area we recently examined in *Syracuse Cablesystems v Niagara Mohawk Power Corp.* (173 AD2d 138). In *Syracuse Cablesystems,* we held that recovery was available in tort for lost profits and property damage resulting from the explosion of an electrical transformer. The alleged failure of an electrical transformer in this case, however, resulted in economic loss and is recoverable only in contract. Thus, this case and *Syracuse Cablesystems* fall on opposite sides of the line separating tort and contract claims *(see generally, Sommer v Federal Signal Corp.,* 79 NY2d 540, 550-553).

Plaintiff, a division of Bristol-Myers Squibb Company, is engaged in the production of pharmaceuticals. In December 1988 an electrical transformer at plaintiff's East Syracuse facility failed. Plaintiff hired defendant Delta Star, Inc. (Delta Star) to repair the transformer and to supervise its installation. Defendant Westinghouse Electric Corporation (Westinghouse) entered into a contract with plaintiff to install the transformer upon the completion of its repair by Delta Star. The repaired transformer was installed between April 4 and April 12, 1989. On April 15 and again on May 1, the transformer failed, causing a loss of electrical power to plaintiff's East Syracuse facility. As a result, the compressors supplying air necessary for the fermentation of penicillin shut down, the

fermentation process was prematurely halted, and 40,000 kilograms of penicillin were lost.

Plaintiff commenced this action to recover damages for the loss in production and lost profits from the projected sale of that product. The complaint contains four causes of action, alleging breach of contract and negligence on the part of each defendant. Delta Star, in its answer, asserts a cross claim for contribution against Westinghouse. Westinghouse moved for summary judgment dismissing the complaint, and Supreme Court denied the motion. Westinghouse now appeals from that part of the order that denied its motion for summary judgment dismissing plaintiff's fourth cause of action, which alleges that Westinghouse installed the repaired transformer in a negligent manner. We reverse.

■ Our analysis begins with the observation that, unlike the parties in *Syracuse Cablesystems (supra)*, plaintiff and Westinghouse entered into an agreement defining their respective rights and duties. Plaintiff alleges that Westinghouse performed its contractual obligations negligently. The question before us is whether Westinghouse's alleged negligence in installing the transformer constitutes a breach of contract, a tort, or both. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated *(Meyers v Waverly Fabrics,* 65 NY2d 75, 80, n 2; *North Shore Bottling Co. v Schmidt & Sons,* 22 NY2d 171, 179; *Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 390). This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract *(see, Rich v New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 398, *supra)" (Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 389; *accord, Board of Educ. v Sargent, Webster, Crenshaw & Folley,* 71 NY2d 21, 29; *City of Watertown v Stebbins Eng'g & Mfg. Co.,* 206 AD2d 828; *County of Chautauqua v Pacos Constr. Co.,* 195 AD2d 1021).

Plaintiff has not presented any proof that Westinghouse breached any legal duty independent of its contractual obligations. The allegation in the fourth cause of action that "Westinghouse negligently failed to install the repaired transformer in a proper manner" does not, without more, transform a simple breach of contract into a tort *(see, Sommer v Federal Signal Corp.,* 79 NY2d, *supra,* at 551; *Clark-Fitzpatrick, Inc. v*

*Long Is. R. R. Co., supra,* at 390). Nothing in the record suggests that Westinghouse breached a duty of reasonable care distinct from or in addition to its contractual duty to install the transformer in a proper manner. Thus, plaintiff's remedy is in contract.

Plaintiff urges that the line between contract and tort need not be so sharply drawn because the nature of the injury, the manner in which the injury occurred and the damages sought favor recovery in tort as well as contract *(see, Sommer v Federal Signal Corp.,* 79 NY2d, *supra,* at 552; *Bellevue S. Assocs. v HRH Constr. Corp.,* 78 NY2d 282, 293, *rearg denied* 78 NY2d 1008; *Syracuse Cablesystems v Niagara Mohawk Power Corp.,* 173 AD2d, *supra,* at 142; *see also, Dunlop Tire & Rubber Corp. v FMC Corp.,* 53 AD2d 150). In our view, however, consideration of those factors places this action squarely within the realm of contract.

The injury allegedly suffered by plaintiff—the loss of a batch of penicillin in production—is not akin to the personal injury and casualty loss sustained by the plaintiffs in *Syracuse Cablevision (supra).* In that case, the explosion of an electrical transformer caused oil, containing polychlorinated biphenyls (PCBs), to leak into the building occupied by plaintiffs, contaminating their clothing, office supplies and equipment and forcing them out of their offices for nearly a month. We characterized the manner in which the accident in *Syracuse Cablevision* occurred as "a sudden, accidental and cataclysmic explosion of the transformer" *(supra,* at 143; *see also, Sommer v Federal Signal Corp., supra,* at 552; *Bellevue S. Assocs. v HRH Constr. Corp., supra,* at 294). In the instant case, however, plaintiff's injury resulted from "a process of failure of the product to perform as anticipated under normal business conditions—a traditional breach of contract situation" *(Bellevue S. Assocs. v HRH Constr. Corp., supra,* at 294).

Because the damage allegedly suffered by plaintiff arises from the failure of the repaired transformer to perform as intended and not from any accidental occurrence, plaintiff is relegated to contractual remedies for economic loss *(see, Arell's Fine Jewelers v Automatic Fire Alarm Co.,* 170 AD2d 1013, 1014; *Antel Oldsmobile-Cadillac v Sirus Leasing Co.,* 101 AD2d 688, 689; *Hemming v Certainteed Corp.,* 97 AD2d 976). Plaintiff may not recover for purely economic loss in tort *(see, Schiavone Constr. Co. v Elgood Mayo Corp.,* 56 NY2d 667, *revg on dissent* 81 AD2d 221, 227-234; *Arell's Fine Jewelers v*

*Automatic Fire Alarm Co., supra,* at 1014; *Cayuga Harvester v Allis-Chalmers Corp.,* 95 AD2d 5, 26-27).

Plaintiff seeks to escape application of the economic loss rule on the ground that its damages did not result from *product* nonperformance, but from negligent performance of *services.* In our view, it is of no consequence whether the failure of the transformer to perform as promised was due to faulty installation or to the breakdown of the transformer itself. The economic loss rule reflects the principle that damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort *(see, Bellevue S. Assocs. v HRH Constr. Corp.,* 78 NY2d, *supra,* at 294-295; *Syracuse Cablesystems v Niagara Mohawk Power Corp.,* 173 AD2d, *supra,* at 142; *Hemming v Certainteed Corp., supra).* That principle extends beyond the relationship between consumers and manufacturers or suppliers of goods. The economic loss rule does not provide any basis for distinguishing between the liability of product manufacturers and product installers for damages relating to the expectations of contracting parties. Whether a product fails to perform as promised due to negligence in the manufacturing process or in the installation process, recovery in negligence is unavailable for purely economic loss. Thus, the economic loss rule serves to limit the liability of providers of services as well as providers of products *(see, Key Intl. Mfg. v Morse/Diesel, Inc.,* 142 AD2d 448, 451-452 [architects and engineers on construction project]; *Lake Placid Club Attached Lodges v Elizabethtown Bldrs.,* 131 AD2d 159, 162 [builder and architect of condominium development]).

■ Finally, we note that contribution is not available for purely economic loss resulting from breach of contract *(see, Board of Educ. v Sargent, Webster, Crenshaw & Folley,* 71 NY2d 21, *supra; United Servs. Auto. Assn. v Maurice Assocs.,* 188 AD2d 1021, 1022; *Facilities Dev. Corp. v Miletta,* 180 AD2d 97, 102-103). Thus, Delta Star's cross claim for contribution cannot survive the dismissal of plaintiff's negligence cause of action against Westinghouse.

Accordingly, the order insofar as appealed from should be reversed, Westinghouse's motion granted in part and the fourth cause of action dismissed.

DENMAN, P. J., FALLON, WESLEY and DOERR, JJ., concur.

Order insofar as appealed from unanimously reversed, on the law, with costs, motion granted in part, and fourth cause of action dismissed.